UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                        :
MOHAMMED BHATTI,                            :
                            Plaintiff,    :
                                                        :            11 Civ. 1044 (JPO)
                            -v-                  :
                                                        :            MEMORANDUM AND
SEAN PETTIGREW and HENRY SHERMAN  :            ORDER
HARRIS,                                                  :
                                 Defendants.:
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

      Presently before the Court is Plaintiff's motion to remand this matter to the Supreme Court of the State of New York, Bronx County.

      Plaintiff Mohammed Bhatti, individually and as the proposed administrator of the estate of Rizwana Bhatti, deceased, commenced this action on January 19, 2011, in New York Supreme Court, Bronx County. Plaintiff seeks damages arising from an accident that took place on October 14, 2010, in the Bronx, New York, in which pedestrian Rizwana Bhatti was struck by a vehicle allegedly driven by Defendant Sean Pettigrew and owned by Defendant Henry Sherman Harris.

      On February 15, 2011, Defendants removed the action to this Court based on alleged diversity of citizenship under 28 U.S.C. § 1332(a). (Dkt. No. 1.) Defendants allege that complete diversity exists because Mr. Harris was and is a citizen of the State of Georgia, not New York as Plaintiff alleges.[1] During a status conference on March 10, 2011, Judge Paul A. Crotty, to whom this matter was previously assigned, ordered a period of limited discovery with

---

[1] It is undisputed that Mr. Pettigrew is a citizen of the State of Georgia and that Mr. Bhatti is a citizen of the State of New York. Defendants also assert that the matter in controversy exceeds $75,000.

1

respect to the residence of Mr. Harris. Plaintiff deposed Mr. Harris on May 12, 2011. On September 30, 2011, this matter was reassigned to the undersigned. On October 12, 2011, Plaintiff filed the instant motion to remand this action to state court on the ground that Mr. Harris was actually a citizen of the State of New York, not a citizen of Georgia, at the time this action was commenced.

For the reasons discussed below, Plaintiff's motion to remand this action to state court is granted.

### I.    Background

Mr. Harris was born in Georgia. His father owns a house in Macon, Georgia, where Mr. Harris at least occasionally resides (the "Georgia house"). Mr. Harris claims that the Georgia house is his permanent home and his domicile for the purposes of the present action. (Deposition of Henry Sherman Harris, May 12, 2011 ("Harris Dep."), attached to Declaration of Jean M. Prabhu ("Prabhu Decl.") 3:13-14; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand to State Court, p. 1.)

Mr. Harris was arrested in New York in approximately 2001 and sentenced to ten years in prison. (Harris Dep. 36:5-35.) Mr. Harris spent nine years incarcerated in various state facilities in New York State. (Harris Dep. 35:6-10.) On August 31, 2008, Mr. Harris was released and began serving an eighteen-month period of parole. (Harris Dep. 37:23-38:9.) He registered for parole at 278 W. 118th Street, Apt. 44B, New York, New York (the "New York apartment"), an apartment rented by Mr. Harris's girlfriend, Ms. Regina Keith. (Harris Dep. 41:17-20.) As a condition of parole, Mr. Harris was required to remain in the State of New York. (Harris Dep. 49:25-50:4.)

During the period of his parole, Mr. Harris received rental assistance from New York City. The rental assistance payments were made directly to Ms. Keith. Mr. Harris also received food stamps and Medicaid benefits from New York City. (Harris Dep. 53:7-23.)

Mr. Harris completed his period of parole in January 2010. (Harris Dep. 49:23-24.) He asserts that he moved back to Macon, Georgia in March 2010. (Harris Dep. 50:17-51:3.) Mr. Harris relinquished his New York driver's license and obtained a Georgia license in May of 2010. (Harris Dep. 90:4-15.) He also obtained vehicle insurance in Georgia and changed the registration of his trucking business, Going Your Way Transport, to the Georgia house in May 2010.

Mr. Harris's rental assistance from New York ceased upon the completion of his parole. However, Mr. Harris continued to receive food stamps and Medicaid benefits from New York City through the time of his deposition on May 12, 2011 (although he stated that he did not intend to reapply for these benefits in New York).[2]

Mr. Harris contends that he comes to New York approximately five times a month, as a result of his trucking work. (Harris Dep. 92:2-5; 93:5-8.) When he is in New York City he stays at the New York apartment with his girlfriend, Ms. Keith. (Harris Dep. 93:12-14.) Mr. Harris receives mail at the New York apartment, including all of his bank statements and credit card

---

[2] "Q. Are you still receiving Medicaid?
A. Yes.
Q. And that's still through the City of New York?
A. Yes.
Q. Are you still receiving rent assistance through the City of New York?
A. No.
Q. Are you still receiving food stamps through the City of New York?
A. Yes."
(Harris Dep. 55:12-23; *see also* 58:25-59:8.) Documents from the New York City Human Resources Administration also confirm that Mr. Harris has received New York City medical benefits from 2008 through July 2011 continuously. (Ex. 10, Prabhu Decl.)

statements. (Harris Dep. 106:10-14.) Mr. Harris visits doctors in New York City as a result of an accident in which he was involved, which occurred in New Jersey on April 5, 2011. (Harris Dep. 144:11-22; 147:8-9.) Mr. Harris has a primary care physician and a physical therapist located in New York, as well as a New York-based lawyer representing him in connection with the New Jersey accident. (Harris Dep. 107:25-108:10; 149:18-150:22.) During his May 12, 2011 deposition, Mr. Harris stated that he intends to continue his physical therapy in New York City.[3] (Harris Dep. 173:22-174:5.)

Mr. Harris has a sister who lives in Georgia, and a brother who lives, at least partially, with a girlfriend in the Bronx, New York. (Harris Dep. 14:11-15:9; 132:2-12.) Although Mr. Harris initially stated that he resided with his father in Georgia, there is evidence that Mr. Harris's father maintains an apartment in the Bronx, which he shares with his girlfriend of thirty years. (Harris Dep. 6:25-8:2; 16:21-17:12; 143:8-20.) From the mid-1970s through the mid-2000s, Mr. Harris's father operated a produce and grocery store in the Bronx, where Mr. Harris occasionally worked prior to his incarceration. (Harris Dep. 116:17-117:12; 119:6-16.) During his deposition, Mr. Harris admitted that he lived with his father and his father's girlfriend in the Bronx at some point prior to his incarceration. (Harris Dep. 120:8-24.)

## II. Legal Standard

Under 28 U.S.C. § 1332, a district court has subject matter jurisdiction over a civil action if the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). Parties seeking to invoke jurisdiction under § 1332 (in this case, Defendants) bear the burden of demonstrating that the grounds for diversity exist. *Advani*

---

[3] In contrast, Defendants submitted evidence that Mr. Harris receives some mail at the Georgia house, including a bill from a podiatrist in Georgia. (*See* Ex. A to Sherman Affidavit, Notice of Removal, Dkt. No. 1.)

*Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998).  When the basis of removal from state court is diversity between the parties, diversity must exist not only at the time the suit is commenced, but also at the time the removal petition is filed.  *See, e.g.*, *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723 (4th ed. 2011).  The policy behind § 1332 requires that it be strictly construed against finding jurisdiction.  *See Deajess Medical Imaging, P.C. v. Allstate Ins. Co.*, 381 F. Supp. 2d 307, 310 (S.D.N.Y. 2005) (citing *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).

An individual's citizenship is determined by his domicile, which is established at birth and is presumed to continue absent sufficient evidence of change.  *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).  Domicile refers to "the place where a party has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."  *Palazzo*, 232 F.3d at 42.  The presumption that a person retains his domicile applies every time a person establishes a domicile.  *Id.*; *see also Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455-56 (W.D.N.Y. 2011) (citing *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)) ("A person's domicile, once established, is presumed to continue absent evidence that it has been changed.").  To effect a change of domicile, two elements are required: first, residence or physical presence in the new domicile; and second, the intent to remain there indefinitely.  *Gutierrez v. Fox*, 141 F.3d 425, 428 (2d Cir. 1998).  "A party attempting to prove a change in domicile so that a federal court has diversity jurisdiction bears the burden of proving such change by clear and convincing evidence."  *Braten v. Kaplan*, No. 07 Civ. 8498, 2009 WL 614657, at *3 (S.D.N.Y. Mar. 10, 2009) (citing *Palazzo*, 232 F.3d at 42) (citations omitted).

5

To determine whether a party seeking to establish a change in domicile has satisfied the burden, a "totality of the evidence" approach is followed, and no single factor is conclusive. *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 333 (S.D.N.Y. 2007). Among the influential factors are the person's state of residence; the state where his family resides; whether he owns or rents property; and where he keeps his personal belongings, works, exercises his political rights, maintains religious or social affiliations, pays taxes, holds a driver's license, and maintains bank accounts. *See Braten*, 2009 WL 614657, at *3; *National Artists Management Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991). Courts also consider the location of a person's physician, lawyer, accountant, dentist, stockbroker, and similar relationships. *Id*. (citations omitted). "None of these factors can establish domicile conclusively; rather, a court must examine the range of a person's conduct to draw the necessary inferences as to the relevant intent to establish a domicile." *Braten*, 2009 WL 614657 at *3 (citations and quotation marks omitted).

### III.     Application

Plaintiff has submitted evidence that supports a finding that Mr. Harris was domiciled in New York at the relevant times (*see* exhibits attached to Prabhu Aff., Dkt. Nos. 29-36), while Defendants have submitted evidence that Mr. Harris was domiciled in Georgia (*see* exhibits attached to Notice of Removal, Dkt. No. 1).[4] Indeed, there is evidence that Mr. Harris maintained a physical presence in both his father's house in Georgia and his girlfriend's apartment in New York. In such situations, physical presence alone is not sufficient to establish domicile; a party's *intent* to remain at a location indefinitely is also essential. "[A] party's own

---

[4] The Court has considered all the evidence submitted, although not every piece of evidence is discussed in this opinion.

statements concerning his intentions are relevant, but they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent." *National Artists*, 769 F. Supp. at 1227-28 (citing *Bevilaqua v. Bernstein*, 642 F.Supp. 1072, 1074 (S.D.N.Y.1986)); *see also Shcherbakovskiy v. Seitz*, No. 03 Civ. 1220, 2010 WL 1063566, at *3 (S.D.N.Y. Mar. 23, 2010). To determine a party's domicile, the district court must take into account the party's entire course of conduct. *National Artists*, 769 F.Supp. at 1227.

Mr. Harris asserts that Georgia is his intended domicile and that he never intended to change his domicile to New York. He argues that he was only in New York involuntarily as a result of his incarceration and that when his parole ended, he returned permanently to Georgia in March of 2010.[5] However, Mr. Harris's statements concerning his intent to remain in Georgia conflict with evidence in the record that Mr. Harris maintained his primary residence in New York and traveled to Georgia on the weekends. For example, it is undisputed that Mr. Harris's girlfriend resides in New York. Mr. Harris receives his bank account statements in New York, regularly visits doctors in New York, and has family members in New York. Most telling, however, is the fact that Mr. Harris was still receiving public assistance from the City of New York, including food stamps and Medicaid, at the time of his deposition on May 12, 2011—three months after the case was removed to federal court. In order to qualify for these benefits, Mr. Harris represented to New York City agencies that he was a resident of New York State, residing

---

[5] A prisoner's domicile does not change due to the mere fact that he is incarcerated in a certain state. *See, e.g.*, *Braten*, 2009 WL 614657, at *4 ("[I]t is presumed that a prisoner does not acquire a new domicile simply as a result of his incarceration in a state different from his pre-incarceration domicile, because a prisoner is present in the state only as a result of compulsion and not an intent to remain there indefinitely."); *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 311 (S.D.N.Y. 2007) (requiring presence for the purpose of establishing domicile to be voluntary). Here Defendants argue that Mr. Harris's residency in New York during his parole was involuntary and that Mr. Harris remained domiciled in Georgia throughout this period. The evidence on the record is unclear on this point. The Court ultimately does not need to determine Mr. Harris's domicile during his parole; as discussed below, the Court needs to determine only Mr. Harris's domicile at the time this action was commenced in state court and at the time of removal.

in the New York apartment. He was thus representing himself to be a resident of New York in 2011, even though he asserts that he had moved back to Georgia in March 2010. In continuing to receive these benefits, even after the satisfaction of his parole requirements and his supposed return to Georgia, the Court finds that Mr. Harris's domicile was established in New York.

Instructive here is *Kubin v. Miller*, 801 F. Supp. 1101 (S.D.N.Y. 1992). In *Kubin*, Judge Shirley Wohl Kram held that the defendant was estopped from arguing that he was domiciled in Connecticut when he had maintained in another proceeding that he was a citizen of the State of New York. *Id.* at 1111. Defendants argue that *Kubin* is inapplicable here because Mr. Harris has not "invoked New York as his domicile in any other judicial action." (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand to State Court, p. 11.) Nevertheless, the Court finds the analysis in *Kubin* to be germane. Mr. Harris has made representations to the agencies responsible for administering food stamps and Medicaid that he resided in the New York apartment. Statements made to government agencies, including statements made for the purpose of receiving government benefits, are significant, just as are statements made to the judicial branch. Assuming that Mr. Harris did not intend to commit benefits fraud, this Court will interpret these statements to express Mr. Harris's intent to remain in New York as a citizen of New York.

It is not necessary for the Court to determine the precise date on which Mr. Harris's domicile changed to New York as long as the Court is satisfied that Mr. Harris was domiciled in New York on January 19, 2011, when the action was commenced in state court, and on February 15, 2011, when the action was removed to federal court. While Defendants argue that Mr. Harris's domicile remained in Georgia throughout his period of incarceration and parole, Plaintiff presents some evidence that Mr. Harris already resided in New York prior to his

incarceration. Regardless, the Court finds that the presumption that Mr. Harris's domicile remained in Georgia was definitively rebutted when he continued to receive public assistance benefits in New York following the completion of his parole in January 2010. In light of Mr. Harris's continued receipt of public benefits from the City of New York, Mr. Harris has not established by clear and convincing evidence that he reestablished his domicile in Georgia in March 2010 or anytime thereafter.

### IV.   Conclusion

The Court concludes, based on the totality of the evidence, that Mr. Harris was domiciled in New York at the time of filing of this case and at the time of filing of the petition for removal. Because Mr. Bhatti is also domiciled in New York, complete diversity of the parties does not exist, and the Court lacks subject matter jurisdiction over this action. The Clerk of Court shall close the motion at Docket No. 20 and remand this action to the Supreme Court of the State of New York, Bronx County.

SO ORDERED.

Dated: New York, New York
April 2, 2012

_____
J. PAUL OETKEN
United States District Judge